UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NAKIA COX, | Case No.: 1:18-cv-00008-BLW |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CORIZON CORRECTIONAL HEALTH SERVICES, DR. JOHN MIGLIORI, RONA SIEGERT, GRANT ROBERTS, SAMUL PIERSON, JOE CARDONA, DR. MENARD, and WARDEN JAY CHRISTENSEN, | |
| Defendants. | |

## INTRODUCTION

Before the Court are Defendants Dr. John Migliori, Grant Roberts, and Samuel Pierson's Motion to Dismiss for Lack of Prosecution (Dkt. 29) and Motion for Summary Judgment (Dkt. 33). Having reviewed the briefing, as well as the record in this case, the Court has determined that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## PROCEDURAL BACKGROUND

Plaintiff Nakia Cox filed a pro se Complaint on April 23, 2018, against various individuals and entities, including the moving Defendants. Dkt. 7. The Complaint alleges that Mr. Cox suffers from Thoracic Outlet Syndrome (a vascular condition) ("TOS")

requiring "urgent surgical intervention," but an off-site provider incorrectly diagnosed a separate condition—Reflex Sympathectomy Dystrophy, also known as Complex Regional Pain Syndrome—because it does "not require costly surgical intervention." Dkt. 7 at 7-9. In its Initial Review Order the Court permitted Mr. Cox to proceed against Defendants Migliori, Roberts, and Pierson on claims of deliberate indifference to a serious medical need. Specifically, the Court permitted Mr. Cox to proceed based on the allegations that he had been: "diagnosed with Thoracic Outlet Syndrome, surgery was recommended, and Defendants failed to authorize or provide surgery as recommended, instead diagnosing him with Complex Regional Pain Syndrome and providing opioids as treatment," and that, "[a]s a result, Plaintiff suffers pain and blockage of his arteries, and he lives in constant fear of blood clots, heart attack, or death." Dkt. 10 at 2, 5-6.

On October 8, 2018, Mr. Cox filed a Motion for Preliminary Injunction, asking the Court to order an appointment with an off-site doctor, and treatment for the TOS Mr. Cox believes is necessary. Dkt. 18 at 13-16. On February 27, 2019, the Court denied Mr. Cox's Motion for Preliminary Injunction, concluding that Mr. Cox failed "to establish either a likelihood of success on the merits or a likelihood of irreparable injury in the absence of preliminary injunctive relief." Dkt. 27. The Court summarized the basis of Mr. Cox's claim in this case as "a difference of medical opinion between Dr. Bunt, who initially recommended surgery and a referral to an outside pain specialist, and Defendants Dr. Migliori, Mr. Pierson, Mr. Roberts and Ms. Seigert, who collectively carried out an alternate course of treatment." *Id.*

# UNDISPUTED FACTS

First, the Court notes that Mr. Cox has failed to respond to the Motion for Summary Judgment within the time frame indicated by the Court. The Court sent Mr. Cox the warning it sends to every pro se plaintiff that, "if you do not file your response opposing the motion within 21 days (or such other time period set by the Court), the Court will consider the facts provided by the moving part as undisputed and **may grant the motion** based on the record before it, or it **may dismiss your entire case for failure to prosecute** (abandonment of your case)." *See* Local Rule 7.1(e)(2); Fed. R. Civ. P. 41(b). Dkt. 34, at 2 (emphasis in original).

Mr. Cox has not responded to Defendants' Motion for Summary Judgment. Idaho District Local Rule 7.1 outlines:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the Court. However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the moving party is entitled to the granting of the motion. Idaho Dist. Loc. R. 7.1(e)(2).

Accordingly, pursuant to this Court's Notice to Mr. Cox, as well as Local Rule 7.1, Mr. Cox's failure to timely respond to Defendants' Motion for Summary Judgment is deemed acquiescence to the facts alleged in their motion. The Court thus considers Defendants' Statement of Facts as undisputed.

While incarcerated at Idaho Correctional Institution in Orofino, Mr. Cox voiced complaints regarding pain in his left shoulder and arm. On March 9, 2017, as part of the work up for Mr. Cox's complaints and symptoms, and upon the belief that Mr. Cox may be suffering from thoracic outlet syndrome, it was noted that an evaluation by a vascular or thoracic surgeon was necessary. Dkt. 33-3 at ¶ 4. There was no such specialist available in the area, and therefore Mr. Cox agreed to be transferred to Boise for this specialty evaluation and care. *Id*. On March 14, 2017, Mr. Cox was transferred to Idaho State Correctional Institution to await an appointment with a specialist. *Id*. On May 8, 2017, Mr. Cox was seen offsite by a cardiothoracic and vascular specialist, Dr. Phillipe A. Masser, to be evaluated for TOS, involving the compression of blood vessels or nerves in the lower neck or upper chest. Dkt. 33-3 at ¶ 5. Dr. Masser determined that in fact Mr. Cox was not suffering from TOS and that his symptoms were consistent with Reflex Sympathectomy Dystrophy ("RSD"), rather than a vascular disease. *Id*. Dr. Masser diagnosed Mr. Cox with RSD and noted that treating the condition was not his area of expertise. *Id*. He therefore referred Mr. Cox back to facility providers and noted that "referral to a Pain Medicine specialist was probably in order." *Id*.

RSD (also known as Complex Regional Pain Syndrome or "CRPS") is a relatively poorly understood condition in which a region of the body (typically, the distal limbs) is characterized by on-going pain that is disproportionate (both in degree and persistence) to any known injury or trauma. Dkt. 33-3 at ¶ 6. While RSD often begins with some known trauma, the pain may continue well after the trauma has resolved and may be more severe

than the trauma would normally indicate. *Id*. RSD is believed to be associated with damage to or malfunctioning of the peripheral and central nervous systems, but the precise mechanism and etiology of the condition is not known. *Id*.

Dr. Migliori became involved with Mr. Cox's care after the appointment with Dr. Masser. Dkt. 33-3 at ¶ 7. He reviewed Mr. Cox's medical records and Dr. Masser's evaluation and agreed with Dr. Masser's assessment of RSD as the cause for Mr. Cox's symptoms. *Id*. Though Dr. Masser stated that a referral to a pain specialist was "probably in order," Dr. Migliori determined that no such referral was warranted. *Id*. at ¶ 8. As a medical doctor and anesthesiologist, Dr. Migliori has extensive experience treating and managing chronic pain. *Id*. Unfortunately, RSD is not a condition for which there is a "cure." *Id*. In some cases, patients are treated with nerve blocks in which an anesthetic or other substance is injected around nerve tissue, but those treatments are often ineffective and, even when effective, their effectiveness is often short-lived. *Id*. More often, and certainly as an initial form of treatment, patients with RSD are treated with a variety of medications, including narcotics, medications directed at nerve pain specifically, antidepressants, corticosteroids, non-steroidal anti-inflammatories, and muscle relaxants. *Id*.

Following his visit with Dr. Masser, Mr. Cox's condition was treated and provided the following medications and treatments, which are commonly used to treat RSD: Codeine/APAP (Tylenol #3) – 300 mg of acetaminophen and 30 mg of

codeine, a narcotic, for relief of mild to moderately severe pain; Codeine/APAP (Tylenol #4) – 300 mg of acetaminophen and 60 mg of codeine, a narcotic, for relief of moderate to severe pain; Tramadol – a narcotic for treatment of moderate to severe pain; Duloxetine – a nerve pain medication and antidepressant; Elavil – a nerve pain medication and anti-depressant; Ibuprofen – a pain reliever; Indomethacin – a nonsteroidal anti-inflammatory used to treat pain and inflammation; Gabapentin (Neurontin) – a medication used to treat nerve pain; Prednisone – a corticosteroid; Baclofen – a muscle relaxant and pain reliever; Robaxin – a muscle relaxant and pain reliever; Capsaicin cream – a topical pain reliever; an ice memo, permitting Mr. Cox to ice his arm, and; a compression sleeve. Dkt. 33-3 at ¶ 9.

## LEGAL STANDARD

### 1. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd.*, v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. *Id.* Summary judgment is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex,* 477 U.S. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no genuine dispute as to any material fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id*. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Instead, the "party opposing summary judgment must direct [the Court's] attention to

specific triable facts." *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable

inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

### 2. Deliberate Indifference Standard

Where "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs," a prison official may be liable under 42 U.S.C. § 1983 for violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "However, mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id*. (internal quotation marks and alterations omitted).

"A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id*. (internal quotation marks, citations, and alterations omitted). However, the "routine discomfort that is part of the

penalty that criminal offenders pay for their offenses against society" does not constitute a serious medical need. *Id.*

"Once the prisoner's medical needs and the nature of the defendant's response to those needs have been established, a determination of whether 'deliberate indifference' has been established can be made." *Id.* at 1060. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *Id.* "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

## ANALYSIS

Mr. Cox bases his Eighth Amendment claim on a difference of medical opinion between Defendants Dr. Migliori, Mr. Pierson, and Mr. Roberts, and another provider who initially recommended surgery for TOS and a referral to an outside pain specialist. Dkt. 10 at 6. But a difference of medical opinion between doctors over medical treatment does not amount to deliberate indifference to a serious medical need. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d

1051, 1058 (9th Cir. 2004). Mr. Cox has not pointed to any evidence to suggest any individual Defendant made a decision that was "medically unacceptable" or that "conscious[ly] disregard[ed] an excessive risk" to his health and safety. On the contrary the undisputed facts before the Court show Defendants provided Mr. Cox with a treatment plan was reasonable under the circumstances. For the following reasons, the Court will grant Defendants' motion for summary judgment.

1.  **There Is an Absence of Evidence That Dr. Migliori Was Deliberately Indifferent to Mr. Cox's Serious Medical Needs**

Mr. Cox alleges his Eighth Amendment rights were violated because Dr. Migliori mistakenly rejected a prior diagnosis of TOS and recommendation for surgery to address Mr. Cox's left shoulder and arm pain, and instead pursued an alternate course of treatment. Dkt. 7 at 8. To survive summary judgment, Mr. Cox must present some evidence that Dr. Migliori subjectively acted with deliberate indifference—i.e. that Dr. Migliori knew of and disregarded an excessive risk Mr. Cox's health and safety. *Toguchi*, 391 at 1057. "Mere indifference, negligence, or medical malpractice will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire*, 726 F.3d at 1082. At most, the record before the court shows a difference of opinion between doctors, which is insufficient to support a claim of deliberate indifference. *See* Dkt. 7 at 11-13. Mr. Cox has not brought forth any evidence to the contrary, and his claims therefore do not survive Defendants' motion for summary judgment.

In fact, the record strongly supports the reasonableness of Dr. Migliori's diagnosis and treatment, and Mr. Cox has not introduced any evidence to refute Dr. Migliori's decisions. Dr. Migliori agreed with an offsite cardiothoracic and vascular specialist that Mr. Cox suffered from RSD rather than TOS. Dkt. 33-3 at ¶ 8. Dr. Migliori agreed with the specialist's diagnosis, not the prior assessment of a non-specialist, and then appropriately and adequately administered Mr. Cox's pain management treatment. *Id.* As a medical doctor and anesthesiologist, Dr. Migliori has extensive experience treating and managing chronic pain. *Id.* He is qualified and competent to manage chronic pain, particularly in the correctional context. *Id* at ¶ 2. Accordingly, the record does not indicate that off-site referral for pain management was appropriate. *See generally id.* Mr. Cox received medications and treatments that are standardly employed to treat RSD. *Id.* at ¶¶ 9-11. Dr. Migliori had no reason to believe Mr. Cox was at risk of harm by virtue of the treatments he was receiving. *Id.*; *see also* Dkt. 33-4. The medical decisions and judgment Dr. Migliori displayed are precisely the sort that do not constitute deliberate indifference to a serious medical need, particularly when it is followed by an extensive course of treatment as outlined above. Mr. Cox's lay disagreement with Dr. Migliori's decision does not constitute deliberate indifference to a serious medical need, and neither does the Eighth Amendment entitle Mr. Cox to the treatment provider of his choice. *See Hayes v. Smith*, No. CV04-620 SEJL, 2007 WL 2413023, at *6 (D. Idaho Aug. 21, 2007).

As indicated above, there is no evidence in the record to support Mr. Cox's claim that Dr. Migliori was deliberately indifferent to a serious medical need. As such, the Court will grant summary judgment in favor of Defendant Dr. Migliori.

## 2. There Is an Absence of Evidence That Defendants Samuel Pierson and Grant Roberts Were Deliberately Indifferent to Mr. Cox's Serious Medical Needs

Mr. Cox also alleges Defendants Pierson and Roberts violated his Eighth Amendment rights by insufficiently responding to his grievances related to the medical care he received for his left arm and shoulder pain. Dkt. 7 at 8-10. Neither Defendant is a medical provider for Mr. Cox, neither is a doctor, and their only involvement with Mr. Cox's care was to review grievances at the first and second level of the IDOC grievance process. Dkt. 33-1 at 12-15. In that capacity both Mr. Pierson and Mr. Roberts had access to Mr. Cox's medical records, reviewed Mr. Cox's grievance forms, and found that Mr. Cox was continually and adequately treated (by multiple providers, both off-site and on-site) for his left arm pain and symptoms. Dkt. 33-5 at ¶¶ 6-8; Dkt. 33-7 at ¶¶ 7-9. Both Defendants specifically reviewed Mr. Cox's off-site visit and evaluation by a cardiothoracic and vascular specialist, Dr. Masser, and his ongoing treatment and pain management with Dr. Migliori. *Id.* Nothing in the medical records presented to Mr. Pierson or Mr. Roberts suggested that off-site care was necessary or that Mr. Cox was receiving inadequate care. *See id.* Not only has Mr. Cox failed to show Defendants Pierson and Roberts acted unreasonably, the record reflects both Defendants reviewed grievances reasonably and adequately in light of the available evidence.

Because Mr. Cox has failed to introduce evidence that either Mr. Pierson or Mr. Roberts subjectively acted with deliberate indifference to his serious medical need, the Court will grant summary judgment in favor of both these Defendants. The evidence before the Court shows that both Mr. Pierson and Mr. Roberts acted reasonably given the information presented in Mr. Cox's grievance forms. *See* Dkt. 33-6 at 26. Both Defendants reviewed the medical record associated with Mr. Cox's request for off-site treatment and followed the recommendations of Doctors Migliori and Masser that Mr. Cox did not need surgery, and that he was receiving adequate care for his pain. *Id.* Following the recommendations of Mr. Cox's treating physicians does not amount to deliberate indifference. Mr. Cox has not produced any evidence to suggest Mr. Pierson or Mr. Roberts denied, delayed, or intentionally interfered with his medical treatment. As such, the Court will grant summary judgment in favor of Defendants Pierson and Roberts.

## ORDER

In accordance with the Memorandum Decision set forth above, NOW THEREFORE IT IS HEREBY ORDERED, that:

1. Defendants' Motion for Summary Judgment (Dkt. 33) is GRANTED.

2. Defendants' Motion to Dismiss for Lack of Prosecution (Dkt. 29) is DENIED AS MOOT.

3. The Court shall issue a separate judgment as required by Rule 58(a).



DATED: April 30, 2019

B. Lynn Winmill
U.S. District Court Judge